IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2022 NOV 28  PM 3: 48

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | | |
|---|---|---|
| SESACO CORPORATION, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | CAUSE NO. 1:20-CV-01053-LY |
| EQUINOM LTD. AND | § | |
| RUBEN JOE GUZMAN, | § | |
| DEFENDANTS. | § | |

## **MEMORANDUM OPINION AND ORDER ON CLAIMS CONSTRUCTION**

Before the court are the parties' Joint Claim Construction Statement filed April 8, 2022 (Doc. #48), Defendant Equinom Ltd. ("Equinom")'s Opening *Markman* Brief filed May 20, 2022 (Doc. #51), Plaintiff Sesaco Corporation ("Sesaco")'s Opening *Markman* Brief filed May 20, 2022 (Doc. #52), Sesaco's Reply Claim Construction Brief in Response to Equinom's Opening *Markman* Brief filed June 30, 2022 (Doc. #53), Equinom's Reply to Plaintiff's Opening *Markman* Brief filed June 30, 2022 (Doc. #55), and all related briefing.

The court held a claim-construction hearing on September 1, 2022. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The court renders this memorandum opinion and order to construe certain terms of United States Patent Nos. 8,080,707 B2 (the "'707 Patent"), and 8,656,692 B2 (the "'692 Patent") (collectively, the "Patents-in-Suit"). Having considered the Patents-in-Suit, their prosecution history, applicable law, briefing, and arguments of counsel, the court renders the following claim-construction order.

## I.      Introduction

Sesaco sued Equinom and Ruben Joe Guzman in the Austin Division of the United States District Court for the Western District of Texas, alleging that Equinom infringes on the Patents-in-Suit through Equinom's Improved Non-Dehiscent ("IND") sesame seeds, IND sesame plants, and associated harvesting processes.

## II.      Legal Standard

Determining infringement is a two-step process. *See Markman*, 517 U.S. at 384 ("[There are] two elements of a simple patent case, construing the patent and determining whether infringement occurred . . . ."). First, the meaning and scope of the relevant claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Step one, claim construction, is the issue currently before the court.

Claim construction is "'exclusively' for 'the court' to determine." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015). The court construes patent claims without the aid of a jury. *See Markman*, 517 U.S. at 391. The words of a claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("We indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning."). "In some cases, the ordinary meaning of claim language may be readily apparent and claim construction will involve little more than the application of the widely accepted meaning of commonly understood words." *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1375 (Fed. Cir. 2017) (citing

*Phillips*, 415 F.3d at 1314).  To ascertain the meaning of a claim, a court must look to the claim, the specification, and the patent's prosecution history.  *Id.* at 1314–17.

Claim language guides the court's construction of a claim term.  *Id.* at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive."  *Id.*  Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent . . . ."  *Id.*  Differences among claims, such as additional limitations in dependent claims, can provide further guidance.  *Id.* at 1314–15.

Claims must also be read "in view of the specification, of which they are a part."  *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 933 (Fed. Cir. 2019) (internal quotations omitted).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582); *see also Teleflex*, 299 F.3d at 1325.  In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess.  *Phillips*, 415 F.3d at 1316.  In such a case, the patentee's lexicography governs.  *Id.*  The specification may also reveal a patentee's intent to disavow claim scope.  *Id.*  Such intention is dispositive of claim construction.  *Id.*  Although the specification may indicate that a certain embodiment is preferred, a particular embodiment appearing in the specification will not be read into the claim when the claim language is broader than the embodiment.  *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the

3

patentee intended the claims to be so limited."). Additionally, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325.

The prosecution history is another tool to supply the proper context for claim construction because it demonstrates how the inventor understood the invention. *Phillips*, 415 F.3d at 1317. A patentee may also serve as his own lexicographer and define a disputed term in prosecuting a patent. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Similarly, distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1998). "[B]ecause the prosecution history represents an ongoing negotiation between the [United States Patent and Trademark Office] and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317; *see also Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-21 (1940); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'" (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)). Additionally, "'[a]n applicant's argument that a prior art

4

reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well.'" *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1141 (Fed. Cir. 2021) (quoting *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1379 (Fed. Cir. 2021)). The doctrine of prosecution disclaimer "'ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers.'" *Traxcell Techs.*, 14 F.4th at 1141 (quoting *SpeedTrack*, 998 F.3d at 1379). A disclaimer of claim scope must be clear and unambiguous. *See Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) ("[T]he standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature. Ambiguous language cannot support disavowal.").

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (internal quotations omitted). Technical dictionaries and treatises may help the court understand the underlying technology and the way one skilled in the art might use a claim term, but such sources may also provide overly broad definitions or may not be indicative of how a term is used in the patent. *See id.* at 1318. Similarly, expert testimony may aid the court in determining the meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms[.]" *Id.* Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, but it "cannot be used to alter a claim construction dictated

by a proper analysis of the intrinsic evidence." *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004); *see also Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("When an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained."). To the extent the court "make[s] subsidiary factual findings about the extrinsic evidence," the court construes the claims in light of those factual findings. *Teva Pharms.*, 574 U.S. at 320. However, "the resulting claim interpretation must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (citing *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 693 (Fed. Cir. 1997) ("[T]hroughout the interpretation process, the focus remains on the meaning of claim language.").

Patents are interpreted from the perspective of one of ordinary skill in the art. *Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003) (claim terms "are examined through the viewing glass of a person skilled in the art"); *see also Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (listing non-exhaustive factors that may be considered in determining level of ordinary skill in the art, including "educational level of active workers in the field"). The person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent. *Phillips*, 415 F.3d at 1313. The parties agree that in this case a person of ordinary skill in the art would have at least a bachelor-of-science ("B.S.") degree in a biological or chemical

6

science, such as agriculture, agronomy, biology, chemistry, molecular biology, plant science, plant breeding, or a related field. The parties disagree as to the years of experience in plant breeding required to be a person of ordinary skill in the art in the instant case. The Patents-in-Suit are agricultural patents, and are not nearly as technical as, for example, software patents; this court has taken this into account in evaluating a person of ordinary skill in the art for the Patents-in-Suit. For purposes of claim construction, this court considers a person of ordinary skill in the art to be an individual that holds at least a B.S. degree in a biological or chemical science and has at least some experience in breeding sesame.

A claim is indefinite if it does not reasonably inform a person of ordinary skill in the art of the claim scope. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Even if a claim's definition can be reduced to words or the patentee can articulate a definition supported by the specification, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008); *see Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art.").

7

### III.    Analysis

#### A.    Agreed constructions

The parties agree to the following constructions by their Joint Claim Construction Statement filed April 8, 2022 (Doc. #48) and at the claims-construction hearing held on September 1, 2022:

| Claim Term or Phrase | Court's Construction |
|---|---|
| "capsules retaining essentially all of their seed" ('707 Patent:  claim 1) "capsules retain essentially all of their seed" ('692 Patent:  claims 1 and 13)  (agreed by Joint Claim Construction Statement) | **"capsules have lost 0 to 2 seeds"** |
| "sesame crop" ('692 Patent:  claims 1, 6, 7, 13, 18, and 19)  (agreed by Joint Claim Construction Statement) | **"sesame seed"** |
| "6% or less" ('692 Patent:  claims 7 and 19)  (agreed by Joint Claim Construction Statement) | **"4% to 6%"** |

#### B.    Disputed Terms

1.  "ideal harvest time"[1]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
|---|---|
| "The end of the late drydown stage when the dried sesame crop has a seed moisture content from 4% to 8%." | Indefinite. |

---

[1] '707 Patent:  claim 1; '692 Patent:  claims 1, 6, 13, and 18.

Sesaco points to the Patents-in-Suit's specification, which explains that "[t]he 'ideal harvest time' is at the end of the late drying stage," *with clarification* based on the understanding of a person of ordinary skill in the art that "[t]he late drydown stage ends when the plants are dry enough so that upon harvest, the seed has a moisture of 6% or less." A person of ordinary skill in the art, Sesaco asserts, would understand that the term "ideal harvest time" is determined with reference to seed moisture content. Equinom argues that Sesaco's proposed construction seeks to redefine "ideal harvest time," and that all terms have meaning and cannot be arbitrarily excluded. Additionally, Equinom points out that each prior art reference Sesaco cites states that at the end of late drydown, seed moisture is 6% or less—not a 4%-8% range, and that the specification itself does not refer to a seed moisture content of 4% to 8%.

Equinom argues that the term is indefinite because the claim language is based on the indefinite terms "physiological maturity," "full natural growth," and "capsules begin to dry," and because the claim language is susceptible to multiple interpretations. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). A claim, when viewed considering the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

The court finds that the term "ideal harvest time" particularly points out and distinctly claims the subject matter regarded as the invention. Having reviewed the intrinsic evidence, the court concludes that the term "ideal harvest time" is not indefinite, as it is sufficiently reasonably clear to inform those of ordinary skill in the art with reasonable certainty of the scope of the

invention.  *See, e.g.*, *Interval Licensing*, 766 F.3d at 1370 ("Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in context of the invention."); *see also ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022) ("Just because a term is susceptible to more than one meaning does not render it indefinite.").

The court agrees with Equinom that "ideal harvest time" is defined by seed moisture content neither in the Patents-in-Suit nor in the specification.  In its Reply Claim Construction Brief in Response to Equinom's Opening *Markman* Brief, Sesaco articulates that it would not object to construing the term "ideal harvest time" as simply the end of the late drydown phase. The court agrees with this construction, as this is how "ideal harvest time" is explicitly defined in the specification.  *See Homeland Housewares*, 865 F.3d at 1376 ("Under these circumstances, we, of course, may adopt a definition not proposed by either party that best fits with the claim language and specification." (citing *Exxon Chem. Pats., Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1556 (Fed. Cir. 1995) ("[T]he judge's task is not to decide which of the adversaries[' constructions] is correct. Instead, the judge must independently assess the claims, the specification, and if necessary the prosecution history, and relevant extrinsic evidence, and declare the meaning of the claims.")).

The court concludes that the construction of "ideal harvest time" to be the following: **"The 'ideal harvest time' is at the end of the late drying stage."**[2]

---

[2] Throughout, the **bolded** claim terms indicate the court's adopted construction.

2.  "seed is visible"[3]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
|---|---|
| "Some of the seeds can be seen in the open tip of the capsule, including when the observer bends or moves the plant, the observer moves his or her head, or the observer crouches over, as needed." | Needs no construction. |

The parties dispute whether the term "seed is visible" requires construction beyond its plain and ordinary meaning.  Sesaco proposes a construction that it contends states the plain and ordinary meaning of the term as it would have been understood by one of ordinary skill in the art at the time of the invention.  Equinom argues that the term needs no construction, and that the terms "bends or moves the plant," "moves his or her head," and "crouches over," are in neither the specification nor the file histories.  The court agrees with Equinom and rejects Sesaco's attempt to rewrite the claim phrase.  *See Apple, Inc. v. MPH Techs. Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022) ("Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill would ascribe to a term when read in the context of the claim, specification, and prosecution history." (citing *Phillips*, 415 F.3d at 1313-14)).

The court concludes that the term "seed is visible" be given its **PLAIN AND ORDINARY MEANING**.

---

[3]  '707 Patent:  claim 1; '692 Patent:  claims 1 and 13.

3. "harvesting"[4]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
|---|---|
| "An act or instance of gathering a crop of seed from the field." | "harvesting the crop at least four weeks after ideal harvest time"; or, indefinite |

Sesaco argues that the Patents-in-Suit define IND sesame by characteristics that it would have at a point four weeks after the ideal harvest time, and that it is not necessary to allow particular sesame plants to remain in the field that long to know that they would have that characteristic because that characteristic is inherent in the seed itself, regardless of when it is actually harvested. In other words, it is a characteristic of the plant—not an instruction for harvesting. Additionally, Sesaco argues that the claims use the word "harvesting" only in its plain and ordinary sense of gathering a crop, and that where the claims specify a period of "four weeks after the ideal harvest time," they recite that phrase expressly. Equinom argues that because some characteristics of the Patents-in-Suit are weather dependent, unless plants are grown and inspected "four weeks after ideal harvest time," there is no telling if 85% of the capsules will have visible seed, or if capsules will lose at most two seeds; even if one were to assume the previous generation of plants had all the claimed characteristics, seeds from those plants grown in the following season might not. Equinom also argues that nothing in the patent Abstract, specification, or any of the file histories suggest that "flexibility" is any time before "four weeks after ideal harvest time."

---

[4] '707 Patent:  claim 1; '692 Patent:  claims 1 and 13.

Equinom proposes a construction based on its assertion that Sesaco's statements in the specification and the prosecution history have defined "harvesting," such that "harvesting" cannot mean to harvest at any time.  Equinom cites to the doctrine of prosecution disclaimer, contending that in order to distinguish the Patents-in-Suit from prior art Sesaco told the United States Patent and Trademark Office (the "USPTO") that the alleged invention was sesame plants that "retained essentially all of their seeds" four weeks after what the Patents-in-Suit refer to as the "ideal harvest time," such that Sesaco cannot now assert that "harvesting" means at any time.  This, Equinom contends, would be inconsistent both with what Sesaco told the USPTO and with the specification.  In other words, the patented plants must have the seed retention characteristic four weeks after "ideal harvest time."  Sesaco responds that prosecution disclaimer does not attach here, as there is no unambiguous evidence of disclaimer, and that patentee consistently refers to the ability to retain seeds at least four weeks after harvest time as a *characteristic* and not a *requirement* for when to harvest.

Equinom "bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evidence to one skilled in the art." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063-64 (Fed. Cir. 2016) (citing *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007)).  The alleged disavowal of retention of seeds as a *characteristic* (as opposed to a *requirement*) is ambiguous. *See id.* (prosecution disclaimer does not apply "where the alleged disavowal is ambiguous"); *see also 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013) ("Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.").  Further, the alleged disavowal is unsupported by evidence from the specification; the specification

13

does not suggest that the sesame crop must not or may not be harvested prior to four weeks after ideal harvest time. This court finds that Equinom has failed to meet its burden of demonstrating the existence of a "clear and unmistakable" disclaimer that would have been evidence to one skilled in the art. The bar that Equinom must clear to invoke the doctrine of prosecution history disclaimer is high, and the court finds that Equinom falls short.

Additionally, Equinom argues that Sesaco's proposal results in a construction that is nonsensical. ("~~harvesting~~ [an act or instance of gathering a ~~crop~~ [seed] of seed]..."). Sesaco responds that while the *agreed* construction of the term "sesame crop" is "sesame seed" (because sesame seeds are cultivated primarily for their seeds), the individual terms "crop" and "seed" are not automatically interchangeable. The court notes that Equinom agreed to the construction of crop as seed, and this court will not countenance an argument based on "nonsensical construction" due to an agreed term. The court will not address this argument for any other term for which it has been urged.

Equinom also argues that the term is indefinite. The court finds that the term "harvesting" particularly points out and distinctly claims the subject matter regarded as the invention. Having reviewed the intrinsic evidence, the court concludes that the term "harvesting" is not indefinite, as it is sufficiently reasonably clear to inform those of ordinary skill in the art with reasonable certainty of the scope of the invention. *See e.g.*, *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022) ("[A] claim is not indefinite just because it is broad.").

Equinom also argues that the claims would be invalid for double patenting if they are interpreted as Sesaco proposes. Sesaco asserts that U.S. Patent No. 7,855,317 (the "'317 Patent"), and other patents that the USPTO later granted for other varieties of IND sesame, claim particular

14

patent species of which IND is the patent genus.  This, Sesaco argues, is entirely permissible under the statute, as the disparate species and the genus encompassing them all are not identical in scope and are not the same invention.  Further, Sesaco asserts that it is undisputed that Sesaco has already filed a terminal disclaimer over the '317 Patent.  The court declines to take up this argument at the claim-construction phase; invalidity as a result of "double patenting" is a question for another day.

The court disagrees with both Sesaco and Equinom that this term requires construction beyond its plain and ordinary meaning.  *See Apple*, 28 F.4th at 259 ("Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill would ascribe to a term when read in the context of the claim, specification, and prosecution history." (citing *Phillips*, 415 F.3d at 1313-14)).

The court concludes that the term "harvesting" be given its **PLAIN AND ORDINARY MEANING**.

4. "physiological maturity"[5]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
| --- | --- |
| "A state or condition of a crop of sesame seed marking the endpoint of the ripening stage or phase and the beginning of drying." | Indefinite. |

The parties dispute whether the term "physiological maturity" is indefinite.  Sesaco asserts that the claims recite the term "physiological maturity" as a stage in the development of sesame

---

[5] '692 Patent:  claims 1 and 13.

after which the ideal harvest time is reached, including the specification in Table I which explains that "physiological maturity" marks the transition from the "ripening" stage or phase to the "drying" stage or phase.  Further, Sesaco asserts that the term "physiological maturity" is well known to persons of ordinary skill in the art, having been use for decades in articles on sesame breeding, including articles cited during the prosecution of the '692 Patent.  Equinom responds that a person of ordinary skill in the art would not be able to determine when sesame seeds in a field or plants, or on a single plant, are at "physiological maturity" because, within a population of plants in the field as well as on a single plant, "the seeds reach physiological maturity" at different times.

Equinom argues that the term is indefinite for three reasons: (1) "physiological maturity" is not defined in the specification, and no uniform definition exists; (2) its definition in the '692 Patent is expressly based on the indefinite terms "full natural growth" and "capsules begin to dry"; and (3) the claims' attempted definition is inconsistent with the specification.  Equinom asserts that Sesaco's proposed construction must be incorrect because it rewrites the claim to avoid the indefinite terms "full natural growth" and "capsules begin to dry," which Sesaco added during prosecution ostensibly to clarify the undefined term "physiological maturity."

The court finds that the term "physiological maturity" particularly points out and distinctly claims the subject matter regarded as the invention.  Having reviewed the intrinsic evidence, the court concludes that the term "physiological maturity" is not indefinite, as it is sufficiently reasonably clear to inform those of ordinary skill in the art with reasonable certainty of the scope of the invention. *See, e.g.*, *Interval Licensing*, 766 F.3d at 1370 ("Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art

16

when read in context of the invention."); *see also Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d

1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, and preferably omits, what is well known

in the art." (citing *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir.

1986)); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004) ("[A] patent

disclosure need not enable information within the knowledge of an ordinarily skilled artisan.").

The court agrees with Sesaco's proposed construction. The Patent-in-Suits' specification

explicitly defines "physiological maturity" as after the "ripening" stage and before the "drying"

stage.

The court concludes that the construction of "physiological maturity" to be the following:

**"A state or condition of a crop of sesame seed marking the endpoint of the ripening stage or**

**phase and the beginning of drying."**

5. "full natural growth"[6]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
|---|---|
| "A state or condition of sesame plants having substantially completed growing in a natural environment, such that the crop of sesame seeds on the plant ripens, reaches physiological maturity, and begins to dry." | Indefinite. |

The parties dispute whether the term "full natural growth" is indefinite. Sesaco asserts that

the term "full natural growth" appears in the description of "physiological maturity" in asserted

_____

[6] '692 Patent:  claims 1 and 13.

claims 1 and 13. Equinom argues that the term is indefinite because sesame plants are "indeterminate," which means that they "continue to grow," so when the plant reaches "full natural growth" is unclear, because the next day it will still grow, and Equinom asserts that "full natural growth" is not found in the specification. Sesaco responds that one of ordinary skill would understand from the claim that the period identified by the term "full natural growth" precedes the period identified by the term "ideal harvest time," and there is no need to identify the exact moment the sesame plants reach "full natural growth" to understand the scope of the claim. Sesaco also asserts that a person of ordinary skill would be aware of the indications that sesame plants have reached "full natural growth," and that "full natural growth" does not require the cessation of growth.

The court finds that the term "full natural growth" particularly points out and distinctly claims the subject matter regarded as the invention. Having reviewed the intrinsic evidence, the court concludes that the term "full natural growth" is not indefinite, as it is sufficiently reasonably clear to inform those of ordinary skill in the art with reasonable certainty of the scope of the invention. *See, e.g.*, *Interval Licensing*, 766 F.3d at 1370 ("Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in context of the invention.").

The court does not agree with Equinom that the fact that sesame plants are indeterminate renders the term indefinite, but neither does the court agree with Sesaco that this term requires construction beyond its plain and ordinary meaning. *See Apple*, 28 F.4th at 259 ("Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill would

ascribe to a term when read in the context of the claim, specification, and prosecution history." (citing *Phillips*, 415 F.3d at 1313-14)).

The court concludes that the term "full natural growth" be given its **PLAIN AND ORDINARY MEANING**.

6. "capsules begin to dry"[7]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
|---|---|
| "Sesame begins to dry when the first capsule turns brown." | Indefinite. |

The parties dispute whether the term "capsules begin to dry" is indefinite. Sesaco asserts that the '692 Patent uses the phrase "begins to dry" to further describe "physiological maturity." Sesaco argues that a person of ordinary skill in the art would not have required a definition of this term in the specification or the prosecution history, but instead could readily have identified the loss of moisture when the plant, including the capsule, begins to turn from green to brown. Equinom argues that "when the first capsule turns brown" is found neither in the specification nor the prosecution history.

Equinom argues that the term is indefinite because the claim language is susceptible to multiple interpretations. The court finds that the term "capsules begin to dry" particularly points out and distinctly claims the subject matter regarded as the invention. Having reviewed the intrinsic evidence, the court concludes that the term "capsules begin to dry" is not indefinite, as it

---

[7] '692 Patent:  claims 1 and 13.

is sufficiently reasonably clear to inform those of ordinary skill in the art with reasonable certainty of the scope of the invention. *See ClearOne*, 35 F.4th at 1351 ("Just because a term is susceptible to more than one meaning does not render it indefinite.")

The court agrees with Equinom that "when the first capsule turns brown" is found neither in the specification nor the prosecution history. *See, e.g.*, *Homeland Housewares*, 865 F.3d at 1375 ("'[T]he claim construction inquiry … begins and ends in all cases with the actual words of the claim.'" (quoting *Renishaw*, 158 F.3d at 1248)).  However, the court disagrees with Equinom that the term is indefinite, and the court finds that the term requires no further construction beyond its plain and ordinary meaning. *See Apple*, 28 F.4th at 259 ("Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill would ascribe to a term when read in the context of the claim, specification, and prosecution history." (citing *Phillips*, 415 F.3d at 1313-14)).

The court concludes that the term "capsules begin to dry" be given its **PLAIN AND ORDINARY MEANING**.

7. "moisture in said dried sesame crop is from 4% to 8%"[8] // "said moisture in seeds of said sesame crop is from 4% to 8%[9]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
| --- | --- |
| Moisture is "water in the sesame seed crop expressed as a percentage." | Plain and ordinary meaning. |

---

[8] '692 Patent:  claim 6.
[9] '692 Patent:  claim 18.

The parties dispute whether the construction of the term "moisture in said dried sesame crop is from 4% to 8%" requires construction beyond its plain and ordinary meaning.

Equinom also argues that this is an invalid dependent claim. Every claim—including a dependent claim—is independently presumed valid. 35 U.S.C. § 282(a) ("Each claim of a patent (whether independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."). The court declines to take up Equinom's invalid dependent claim argument at this time.

The court agrees with Equinom that this term does not require construction beyond its plain an ordinary meaning. *See Apple*, 28 F.4th at 259 ("Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill would ascribe to a term when read in the context of the claim, specification, and prosecution history." (citing *Phillips*, 415 F.3d at 1313-14)).

The court concludes that the terms "said moisture in said dried sesame crop is from 4% to 8%" and "said moisture in seeds of said sesame crop is from 4% to 8%" be given their **PLAIN AND ORDINARY MEANING**.

8. "measuring the moisture in a representative selection of capsules of said dried sesame crop"[10]

The parties' proposed constructions of this term are listed in the following table:

| Sesaco's Proposed Construction | Equinom's Proposed Construction |
| --- | --- |
| "measuring the moisture in a representative selection of capsules of said dried sesame crop" refers to "measuring the water in the sesame crop seed contained in a representative selection of capsules" | Indefinite. |

The parties dispute whether the term "measuring the moisture in a representative selection of capsules of said dried sesame crop" is indefinite. Sesaco argues that a person of ordinary skill in the art would recognize that tools used for measuring moisture were used to measure moisture of the *seeds*, which the claim indicates with the phrase "of said dried sesame crop," and that those seeds are crop "in a representative selection of capsules." The basis for the phrase "said dried crop," Sesaco asserts, appears in claim 1, clause (a)(1), which indicates that the crop of seeds is in a capsule that dries down as a whole, and that the relevant moisture measurement is the moisture of the dried seeds in the capsule. Sesaco responds that a person of ordinary skill in the art would understand that the reference to a "representative selection of capsules" identifies how seeds are selected for measuring.

Equinom argues that the term is indefinite because the claim language is susceptible to multiple interpretations, and that neither the specification nor the file histories define "measuring

---

[10] '692 Patent:  claim 6.

the moisture in a representative selection of capsules." The court finds that the term "measuring the moisture in a representative selection of capsules in said dried sesame crop" does not particularly point out and distinctly claim the subject matter regarded as the invention. Having reviewed the intrinsic evidence, the court concludes that the term "measuring the moisture in a representative selection of capsules of said dried sesame crop" is indefinite, as it is not sufficiently reasonably clear to inform those of ordinary skill in the art with reasonable certainty of the scope of the invention.

Sesaco's proposed construction asks the court to rewrite the claim language by essentially substituting "seeds" for "capsules." The court declines to do so. *See Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[W]e construe the claim as written, not as the patentees wish they had written it."). Although "a patentee can act as his own lexicographer, to specifically define terms of a claim contrary to their ordinary meaning," *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) (citing *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998)), this court discerns nothing in the claims, the specification, or the prosecution history that indicates that the patentee here defined "capsule" to mean "seed." Sesaco does not contend that the patentee's use of "capsule" rather than "seed" was a draftsman's mistake, and the patentee made no attempt to have such an error corrected, either by obtaining a certificate of correction from the USPTO, or by action of the district court. *Cf. Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). To the contrary, Sesaco argues only that "capsule" should be construed to mean "seeds in the capsules."

Here, a person of ordinary skill in the art would not be reasonably certain considering the entire record in what part of "said dried sesame crop" the "moisture" was being "measur[ed]." *See*

*Teva Pharms.*, 789 F.3d at 1345 (indefinite term had no "plain meaning to one of skill in the art").

Upon consulting the specification, he or she would not find illumination. *See id.* at 1344 (indefinite

term not defined in specification).

The court agrees with Equinom.  The court concludes the term "measuring the moisture in

a representative selection of capsules of said dried sesame crop" to be **INDEFINITE**.

**C.**     **Summary table of the court's construction of the disputed terms**

| Claim Term | Court's Construction |
|---|---|
| "ideal harvest time"<br><br>('707 Patent:  claim 1; '692 Patent:  claims 1, 6, 13, and 18) | **"The 'ideal harvest time' is at the end of the late drying stage."** |
| "seed is visible"<br><br>('707 Patent:  claim 1; '692 Patent:  claims 1 and 13) | **Plain and ordinary meaning.** |
| "harvesting"<br><br>('707 Patent:  claim 1; '692 Patent:  claims 1 and 13) | **Plain and ordinary meaning.** |
| "physiological maturity"<br><br>('692 Patent:  claims 1 and 13) | **"A state or condition of a crop of sesame seed marking the endpoint of the ripening stage or phase and the beginning of drying."** |
| "full natural growth"<br><br>('692 Patent:  claims 1 and 13) | **Plain and ordinary meaning.** |
| "capsules begin to dry"<br><br>('692 Patent:  claims 1 and 13) | **Plain and ordinary meaning.** |

| "moisture in said dried sesame crop is from 4% to 8%"<br><br>(''692 Patent:  claim 6)<br><br>"said moisture in seeds of said sesame crop is from 4% to 8%"<br><br>('692 Patent:  claim 18) | **Plain and ordinary meaning.** |
|---|---|
| "measuring the moisture in a representative selection of capsules of said dried sesame crop"<br><br>('692 Patent:  claim 6) | **Indefinite.** |

## IV.    Conclusion

For the above reasons, the court construes the disputed claims as noted and so **ORDERS**. No other claim terms require construction.

**IT IS FURTHER ORDERED** that this cause is set for a Scheduling Conference on **January 30, 2023, at 2:00 p.m.**, in Courtroom 7, Seventh Floor, United States Courthouse, 501 W. 5th Street, Austin, Texas 78701.  The parties shall meet and confer in advance of that date in an attempt to settle this case.  If the case is not settled, the parties shall confer in an attempt to reach agreement on a schedule to follow for the remainder of this case.  The court will render a Scheduling Order as a result of the aforementioned Scheduling Conference.

SIGNED this _28th_ day of November, 2022.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

25